Santana v Peter Thomas Roth Labs LLC (2025 NY Slip Op 50971(U))

[*1]

Santana v Peter Thomas Roth Labs LLC

2025 NY Slip Op 50971(U)

Decided on June 13, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 13, 2025
Supreme Court, Kings County

Gregorio Santana, Plaintiff,

against
Peter Thomas Roth Labs LLC, Ryan Roth, Melly Auto Sales Inc., and Jonathan Baez, Defendants.

Index No. 506907/2018

Aaron D. Maslow, J.

This is an action to recover damages for personal injuries and future medical expenses allegedly sustained by Plaintiff Gregorio Santana ("Plaintiff") as a result of a motor vehicle accident that occurred on August 21, 2017. On that date, Plaintiff was a passenger in a vehicle operated by Defendant Jonathan Baez ("Defendant Baez") and owned by Mely Auto Sales Inc. While traveling on the Brooklyn Queens Expressway, Defendant Baez gradually slowed down. The vehicle operated by Defendant Ryan Roth ("Defendant Roth") and owned by Peter Thomas Roth Labs LLC ("Defendant Peter Thomas Roth") failed to reduce speed in time and struck the Baez vehicle from the rear.
The issue of liability was resolved on July 15, 2019 and February 3, 2020, when summary judgment on liability was granted to Plaintiff against Defendant Roth and Defendant Peter Thomas Roth respectively (see NYSCEF Doc Nos. 41, 88). Accordingly, the sole issue remaining for trial is the determination of damages.
Presently before the Court is Plaintiff's motion in limine, dated May 2, 2025, seeking to preclude the testimony of Defendants' biomechanical engineer, Joseph Olberding, PhD, PE ("Dr. Olberding") at trial. Plaintiff argues that Dr. Olberding's qualifications do not meet the standards necessary for him to testify as an expert in this case, relying on Frye v United States (293 F 1013 [DC Cir 1923]); and People v Middleton (54 NY2d 42 [1981]). Additionally, Plaintiff argues that the disclosure fails to satisfy CPLR 3101 (d) because it was served 30 days before jury selection, rendering it untimely and prejudicial, and constitutes willful conduct warranting preclusion, citing Saldivar v I.J. White Corp. (46 AD3d 660 [2d Dept 2007]); Aversa v Taubes (194 AD2d 580, 582 [2d Dept. 1993]); Arpino v F.J.F. & Sons Elec. Co. (102 AD3d 201, 211 [2d Dept 2012]); Sadek v Wesley (117 AD3d 193, 200 [1st Dept 2014]); and Coleman v NYCTA (134 AD3d 427, 429 [1st Dept 2015]). Plaintiff further contends that the disclosure requirements of CPLR 3101 (d) have not been met because the disclosure lacks information on the bases and methodology for Dr. Olberding's opinions and conclusions as it did not include any empirical data that the expert may have relied upon, citing Dovberg v Laubach (154 AD3d 810, 813 [2d Dept 2017]); Parker v Mobile Oil Corp. (7 NY3d 434 [2006]); Ramirez v Sears, Roebuck and [*2]Co. (286 AD2d 428 [2d Dept 2001]); and Guzman ex rel. Jones v 4030 Bronx Blvd. Associates L.L.C. (54 AD3d 42, 46 [2d Dept 2008]).
In opposition, Defendants argue that (1) Dr. Olberding's credentials are sufficient to qualify him as an expert in accident reconstruction and biomechanics, (2) the timing of the disclosure is not in violation of CPLR 3101 (d) (1) (i), and (3) the disclosure complies with the requirements of CPLR 3101 (d) (1) (i). Therefore, Defendants assert that no part of Dr. Olberding's testimony warrants exclusion. Regarding Dr. Olberding's credentials, Defendants argue that Plaintiff's position lacks legal support, citing Drapper v Horan (235 AD3d 584 [1st Dept 2025]) for the proposition that biomedical experts have long been permitted to testify regarding accident mechanisms and causation. Next, Defendants argue that CPLR 3101 does not impose a specific deadline for expert disclosure and preclusion is only warranted upon a showing of willful nondisclosure and prejudice, citing Rowan v Cross County Ski & Skate, Inc. (42 AD3d 563 [2d Dept 2007]) and related cases. Defendants contend that Plaintiff had ample time, but failed, to respond to Dr. Olberding's disclosure. Lastly, Defendants emphasize that there is no requirement for an expert to set forth specific facts and opinions supporting their conclusions; rather, only the substance of those facts and opinions must be disclosed, which, as Defendants argue, has been provided in reasonable detail, citing Drapper v Horan (235 AD3d 584 [1st Dept 2025]), and Cocca v Conway (283 AD2d 787 [3rd Dept 2001]).
Beginning with Plaintiff's assertion that Dr. Olberding's opinions and conclusions are insufficient under CPLR 3101, CPLR 3101 (d) (1) (i) requires that expert disclosure include "the substance of the facts and opinions on which each expert is expected to testify . . . and a summary of the grounds for each expert's opinion." A plain reading of the statute, along with relevant case law, makes clear that substance refers to the methodology being the sources of the facts and the principles are grounds underlying the expert's opinion.
In Dovberg v Laubach (154 AD3d 810 [2d Dept 2017], the Court addressed whether the opinion testimony of a biomechanical engineer who was also a board-certified surgeon was admissible. The doctor was to testify that the force generated by a multivehicle accident could not have caused the plaintiff's knee injuries. The Court held that the "defendants did not sustain their burden of establishing" that the doctor's opinion was based on "generally accepted principles and methodologies" (id. at 813). The Court emphasized that because the defendants provided neither the descriptions of the methodology the doctor used nor the biomechanical engineering principles he relied upon, the plaintiff's motion to preclude his testimony as to the force a cause of the injuries should have been granted in the lower court (id.).
In Guerra v Ditta (185 AD3d 667 [2d Dept 2020]), the plaintiff appealed from the lower court's denial of the motion to set aside the jury verdict on the issue of damages in a rear-end motor vehicle collision case. The plaintiff "moved to preclude the defendant's proffered biomechanical expert . . . from testifying or, in the alternative," for a Frye hearing (id. at 667). The Court clarified that a Frye hearing is not necessary where previous rulings in other courts confirm the admissibility of proffered testimony and held that "biomechanical engineering is a scientific theory accepted in the field" (id. at 668). The Court further held that there was an insufficient foundation that the expert's "opinions related to existing data and were the result of properly applied accepted methodology" and, therefore, the expert's testimony should have been precluded (id. at 669).
In Munoz v Rock Group NY Corp. (200 AD3d 486 [1st Dept 2021]), the Appellate Division, First Department, addressed whether the defendants' biomechanical expert should be [*3]precluded from testifying that the force generated by the accident could not have caused the plaintiff's injuries. The court held that the lower court incorrectly denied plaintiff's motion to compel disclosure of all data relied upon by the expert because the defendants "provided no description of the methodology . . . or biomechanical engineering principle" the expert used to make his determinations.
Plaintiff argues that the first step in determining whether to admit expert testimony is to confirm that the methodology used is generally accepted as reliable by the scientific community, typically through a Frye hearing. In claiming that Dr. Olberding's testimony should be excluded due to his degrees in biomedical engineering and his lack of specific licensure, education, certifications, or other qualifications in accident reconstruction, Plaintiff overlooks the fact that a Frye hearing is not always required to establish the admissibility of expert testimony and biomechanical engineering is a generally accepted field, as demonstrated by Guerra.
Regardless, Dr. Olberding's testimony is analogous to the situations addressed in Dovberg, Guerra, and Munoz. Each of these cases highlights the requirement that a defendant must lay an adequate foundation for the admission of expert testimony. In all three, the courts excluded the expert opinions due to the failure to disclose the underlying methodology and biomechanical principles. Here, Defendants identify the following materials in the expert disclosure as those Dr. Olberding relied upon in forming his opinions:
a. Pleadings;
b. Discovery exchanged between the parties;
c. All deposition transcripts and exhibits of witnesses deposed;
d. New York State Department of Motor Vehicles Police Accident Report [August 21, 2017];
e. Photographs of the subject 2015 Hyundai Genesis sedan;
f. Photographs of the incident 2017 Porsche Cayenne;
g. Medical records and reports of Mr. Gregorio Santana;
h. Internet research;
i. Google Earth images;
j. Publicly available literature, including, but not limited to, learned treatises, textbooks, and scientific standards;
k. Appraisal Report for the subject 2015 Hyundai Genesis sedan [September 20, 2017];
l. Itemized Repair Estimate for the subject 2015 Hyundai Genesis sedan [October 24, 2017];
m. Itemized Repair Estimate, Supplement 2 for the incident 2017 Porsche Cayenne [September 18, 2017];
n. VinLink Report for the subject 2015 Hyundai Genesis sedan;
o. Expert AutoStats data sheets for a 2015 Hyundai Genesis sedan;
p. VinLink Report for the incident 2017 Porsche Cayenne;
q. Expert AutoStats data sheets for a 2017 Porsche Cayenne; and
r. Motions, affirmations, affidavits and exhibits served and filed in this suit and related litigation including but not limited to the motions seeking a summary judgment.
However, beyond this ambiguous list, the disclosure fails to include the methodology used to calculate the forces involved in the accident or the relevant biomechanical engineering [*4]principles. Specifically, it does not identify which "treatises, textbooks, and scientific standards" were relied upon. There is also no indication of what portions of the pleadings, discovery, transcripts, or medical records were considered, nor is any method described for how the force of the accident was determined. What Defendants provided are merely the sources from which facts may be derived and not the facts themselves. The disclosure falls short of the standard required under CPLR 3101.
Further, the expert disclosure notes that Dr. Olberding will testify as to the following:
s. The Hyundai Genesis experienced a rear-end Delta-V of less than approximately 10 miles per hour during the subject collision.
t. During the subject incident, Mr. Gregorio Santana moved primarily rearward relative to the Hyundai and its interior, with subsequent secondary forward motion.
u. Mr. Santana's spine did not experience the biomechanical injury mechanism associated with traumatic intervertebral disc bulges/herniations as a result of the subject collision.
v. Compressive force applied to the spine is required to contribute to the structural progression of intervertebral disc bulges/herniations.
w. The compressive force experienced by Mr. Santana's cervical spine during the subject collision was less than values associated with traumatic disc injury, injury assessment reference values, values generated during voluntary exertion, and values associated with generally non-injurious simple physical activity, such as falling into a chair or hopping.
x. The compressive force experienced by Mr. Santana's lumbar spine during the subject collision was substantially less than values associated with traumatic disc injury and values associated with simple physical activity, such as bending over and sitting quickly in a chair.
y. Mr. Santana's bilateral knees did not experience the biomechanical injury mechanisms associated with traumatic meniscal or anterior cruciate ligament tears as a result of the subject collision.
z. Had Mr. Santana been utilizing the available three-point restraint system, the joint forces experienced by his bilateral knees during the subject collision would have been less than simple physical activity, such as walking on level ground.
Specifically, Dr. Olberding's conclusion regarding the Plaintiff's spine asserts that the compressive force exerted on the cervical spine was below the threshold commonly linked to such injuries. However, the expert fails to provide any numerical value or quantification for this threshold. More generally, while various conclusions are presented, they are merely stated without disclosing the underlying biomechanical engineering principles or methodologies used to reach them.
In Cocca v Conway (283 AD2d 787, 788 [3d Dept 2001]), the Appellate Division, Third Department, held that biomechanical expert testimony was admissible where the disclosures regarding the biomechanical analysis and accident reconstruction included "specific computations concerning the acceleration of the vehicles, their point of impact, the forces exerted upon plaintiff as a result of the impact and the effect that such impact would have on the human body."
Additionally, in Drapper v Horan (235 AD3d 584, 584 [1st Dept 2025]), the Appellate Division, First Department, addressed whether the accident could have caused plaintiff's injuries. [*5]The Court admitted the testimony of the biomechanical engineer because the expert disclosed that he compared the data to "cited to peer-reviewed articles and learned treatises in support of his analysis."
Conversely, here, Defendants failed to provide specific computations concerning the conclusions alleged, did not identify any particular peer-reviewed sources or treatises relied upon, and omitted the necessary biomechanical methodology required to substantiate the expert opinion. As such, the disclosure lacks the foundational elements recognized as essential for admissibility under prevailing case law.
Plaintiff's remaining two arguments that Dr. Olberding's qualifications do not meet the standards necessary for him to testify as an expert in this case and that the disclosure was untimely are now academic, and therefore, need not be addressed.
Accordingly, Plaintiff's motion in limine to preclude the testimony of Defense Biomechanical Engineer, Joseph Olberding, PhD, PE is GRANTED.
THE FOREGOING CONSTITUTES THE DECISION AND ORDER OF THIS COURT.